IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 26-4105

UNITED STATES OF AMERICA,

*Appellee*,

v.

DILQUON BEST,
A/K/A QUON, A/K/A DQ,

*Appellant*.

Appeal from the United States District Court
for the Eastern District of Virginia
at Newport News
*The Honorable Arenda L. Wright Allen, District Judge*

# BRIEF OF THE UNITED STATES

Todd W. Blanche
Attorney General

Theophani K. Stamos
First Assistant United States Attorney

Eric M. Hurt
Assistant United States Attorney
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
(757) 591-4000

*Attorneys for the United States of America*

## Table of Contents

**Page**

Table of Authorities ........ ii

Introduction ........ 1

Issue Presented ........ 1

Statement of the Case ........ 2

A. The government investigates Best as part of a large-scale drug-trafficking organization. ........ 2

B. A grand jury indicts Best and others for their roles in the drug-trafficking organization. ........ 4

C. At trial, the jury convicts Best on four counts. ........ 4

Summary of Argument ........ 6

Argument ........ 7

The district court did not reversibly err by refusing a specific unanimity instruction. ........ 7

A. The district court appropriately declined Best's request for a specific unanimity instruction. ........ 8

B. Any instructional error did not seriously prejudice Best and was harmless. ........ 15

Conclusion ........ 18

Statement Regarding Oral Argument ........ 19

Certificate of Compliance ........ 19

## Table of Authorities

**Page(s)**

**Cases**

*Benjamin v. Sparks*, 986 F.3d 332 (4th Cir. 2021) ....................7

*Brady v. Maryland,* 373 U.S. 83 (1963) ....................12

*Evans v. United States,* 504 U.S. 255 (1992) ....................15

*Gibbons v. Gibbs,* 99 F.4th 211 (4th Cir. 2024) ....................13

*Goins v. Angelone,* 226 F.3d 312 (4th Cir. 2000) ....................12

*McMellon v. United States*, 387 F.3d 329 (4th Cir. 2004) (en banc) ............ 1, 6, 13

*Neder v. United States*, 527 U.S. 1 (1999)....................15

*Richardson v. United States*, 526 U.S. 813 (1991).................... 9. 10, 11

*United States v. Cortez Bumphus*, No. 25-4699 ....................5

*United States v. Ealy,* 363 F.3d 292 (4th Cir. 2004)....................11

*United States v. Fulks*, 454 F.3d 410 (4th Cir. 2006) ....................12

*United States v. Hassler*, 992 F.3d 243 (4th Cir. 2021) .................... 7, 8, 15

*United States v. Jackson*, 879 F.2d 85 (3d Cir. 1989)). ....................10

*United States v. Jerome,* 942 F.2d 1328 (9th Cir. 1991) .................. 6, 11, 13, 16, 17

*United States v. Lamborn,* 159 F.4th 230 (4th Cir. 2025) ....................2

*United States v. McCabe*, 103 F.4th 259 (4th Cir. 2024) ....................7

*United States v. McCauley,* 983 F.3rd. 695 (4th Cir.2020) ....................15

*United States v. Miltier*, 882 F.3d 81 (4th Cir. 2018) .................... 7, 8, 15

*United States v. Norman*, 935 F.3d 232 (4th Cir. 2019) ....................12

*United States v. Roach,* 28 F.3rd. 1212 (4th Cir. 1994)(unpublished) ....................15

*United States v. Roane*, 378 F.3d 382 (4th Cir. 2004)....................1, 5-7, 11-13

*United States v. Rock,* 2022 WL 17688855, at 1 (4th Cir. June 1, 2022) ....................15

*United States v. Stewart*, 256 F.3d 231 (4th Cir. 2001)....................9

*United States v. Stitt*, 250 F.3d 878 (4th Cir. 2001)....................1, 5-7, 9-12

*United States v. Thomas*, 32 F. 4th 420 (4th Cir. 2022) ..........................................9
*United States v. Torcasio*, 959 F.2d 503 (4th Cir. 1992) 1991 ...............................15
*Westmoreland v. TWC Admin. LLC*, 924 F.3d 718 (4th Cir. 2019)...........................7

**Statutes**

18 U.S.C. § 1956(h) ..........................................................................................4
21 U.S.C. § 841 .................................................................................................4
21 U.S.C. § 843(b) ............................................................................................4
21 U.S.C. § 846 .................................................................................................4
21 U.S.C. § 848 ..............................................................................................4, 8
21 U.S.C. § 848(c)(2)(A) ........................................................................ 1, 6, 14, 18

## Introduction

After a multi-year investigation and a three-week jury trial in which multiple co-conspirators testified, Dilquon Best was convicted on four counts for his role in a large-scale drug-trafficking organization operating out of the Eastern District of Virginia. On appeal, Best raises a single challenge to his conviction for engaging in a continuing criminal enterprise ("CCE"), arguing that the district court reversibly erred by failing to require a specific unanimity instruction regarding the five or more people involved in the offense. As the opening brief concedes, however, this Court has twice held that no such unanimity instruction is required. *See United States v. Roane*, 378 F.3d 382, 399 (4th Cir. 2004); *United States v. Stitt*, 250 F.3d 878, 885–87 (4th Cir. 2001). And this Court adheres to "the basic principle that one panel cannot overrule a decision issued by another panel." *McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc).

This Court should affirm Best's convictions and sentence.

## Issue Presented

Did the district court reversibly err by declining to give a specific unanimity instruction requiring the jury to agree on the identities of the five or more persons Best organized, supervised, or managed within the meaning of 21 U.S.C. § 848(c)(2)(A), despite binding Circuit precedent establishing that such an instruction is not required?

## Statement of the Case

"Because the government prevailed at trial," the following facts are recounted "in the light most favorable to it." *United States v. Lamborn*, 159 F.4th 230, 237 (4th Cir. 2025).

### A. The government investigates Best as part of a large-scale drug-trafficking organization.

In the summer of 2021, federal law enforcement opened an investigation into Lux Auto after receiving information about large-scale drug-trafficking activity. *See* JA2460–2462; JA2660; JA2767. They discovered that Lux Auto, a business located within the Eastern District of Virginia, was being used as a base of operations for drug distribution on the East Coast while being supplied by so-called "sources of supply" in California. *See* JA524–527; JA533–536; JA543–551; JA724–726; JA782–783; JA1112–1117; JA1178–1180; JA1353–1356.

Leaders of this organization, including Best, facilitated the source-of-supply contacts in California, *see* JA782–783, and managed the process to pay individuals acting as couriers to fly from Virginia to California with suitcases of cash and then fly back to Virginia with up to 1,000 pounds of drugs per week, *see* JA953–954; JA1241–1246; JA1903–1904; JA2716–2717; JA3658. Once in Virginia, leaders arranged for midlevel members of the organization to receive the marijuana from the couriers and distribute it to customers or have subordinate dealers sell the marijuana. *See, e.g.*, JA723–726; *see also* Def. Br. 6–8.

Between August 17, 2020, and January 25, 2023, federal agents seized cash at airports across the mid-Atlantic region in connection with this investigation, including $400,000 in cash that was derived from the sale of controlled substances or intended for the purchase of contraband. *See* JA2372–2373; JA2439; JA3658; *see also, e.g.*, JA954–963; JA992–999; Def. Br. 7. In addition, between January 20, 2021, and August 24, 2023, federal agents also seized marijuana and related contraband at airports in the mid-Atlantic area, including almost 1,000 pounds of marijuana. *See, e.g.*, JA963–967; JA1002–1010; JA1025–1037; JA1041–1051; JA1055–1063; JA3658; *see also* Def. Br. 7. According to intercepted conversations and airline records between 2017 and 2024, the organization was trafficking as much as 1,000 pounds of marijuana per week into Virginia. *See* JA3658; *see also* Def. Br. 7.

Law enforcement utilized a wide range of investigative techniques over the course of this multi-year investigation, including an expansive financial investigation that uncovered millions of dollars flowing in and out of various accounts belonging to or associated with the defendants and their associates, as well as millions of dollars flowing between peer-to-peer accounts. *See* JA2366–2367; JA2369–2385.

**B. A grand jury indicts Best and others for their roles in the drug-trafficking organization.**

In April 2024, a federal grand jury sitting in Norfolk, Virginia, returned a 127-count second superseding indictment charging Best and numerous other defendants with criminal counts in connection with their participation in the drug-trafficking organization. JA29–175. Best was charged with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848 (Count 1); conspiracy to distribute and possess with intent to distribute marijuana, cocaine, oxycodone, psilocybin, promethazine, and fentanyl, in violation of 21 U.S.C. §§ 841 and 846 (Count 2); conspiracy to launder money, in violation of 18 U.S.C. § 1956(h) (Count 3); and use of a communication facility in furtherance of drug trafficking, in violation of 21 U.S.C. § 843(b) (Count 5). *See* JA29–30; JA32–37; JA39.[1]

**C. At trial, the jury convicts Best on four counts.**

Best and three co-defendants proceeded to a jury trial in July 2025. *See* JA176. As relevant here, during the charging conference, Best and one of his co-defendants, Cortez Bumphus, jointly requested a modification to one of the jury instructions that would have required the jurors to "unanimously agree on the five or more persons" whom Best and Bumphus organized, supervised, or managed

[1] Best also was charged with an additional count (Count 4), which the district court dismissed during trial on the government's motion. *See* JA38; JA2889; Def. Br. 2.

within the meaning of 21 U.S.C. § 848(c)(2)(A), for purposes of Count 1. *See* JA2967–2972. The government opposed the requested modification, specifically invoking this Court's decisions in *Stitt* and *Roane* for the proposition that unanimity on the identity of the five persons is not required. JA2970–2971. The district court noted Best's and Bumphus's objections but sided with the government and did not include a specific unanimity instruction as to the five persons. *See* JA2972.

Following a multi-week trial, Best was convicted on all four counts, including: continuing criminal enterprise, conspiracy to possess with intent to distribute and distribute marijuana, conspiracy to launder money, and use of a communication facility in furtherance of drug trafficking. JA3442–3443.[2] The district court subsequently sentenced Best to a 288-month term of imprisonment. JA3539; JA3630.

This appeal followed.[3]

[2] After return of the jury's verdict, Best and Bumpus jointly moved for dismissal of Count 2 on the grounds of double jeopardy, arguing that it was multiplicitous of Count 1. *See* JA3444–3451; *see also* JA21–22. The government conceded that one of the convictions must be vacated because "conspiracy is a lesser included offense of a [continuing criminal enterprise]," and the district court entered an order vacating Count 2 as a lesser-included offense of Count 1. JA3444–3451; *see also* JA22. The district court expressly noted that, if Best's or Bumphus's conviction(s) on Count 1 are "later vacated," it would have "the power to reinstate the conspiracy convictions." JA3451; *see also* JA3448–3451.

[3] The direct appeal of co-defendant Bumphus is proceeding separately. *See* *United States v. Cortez Bumphus*, No. 25-4699.

## Summary of Argument

Best raises only one issue on appeal, challenging his conviction on the ground that the district court supposedly committed reversible error by refusing a specific unanimity jury instruction for two of the elements necessary to prove a "continuing criminal enterprise." According to Best, the district court should have required the jurors to "unanimously agree on the five or more persons" whom Best organized, supervised, or managed within the meaning of 21 U.S.C. § 848(c)(2)(A). JA2969–2970. But, as Best concedes, Def. Br. 13, this Court has twice held that juror unanimity is not required on that issue. *See United States v. Roane*, 378 F.3d 382, 399 (4th Cir. 2004); *United States v. Stitt*, 250 F.3d 878, 885–87 (4th Cir. 2001). Because the district court properly instructed the jury under that binding Circuit precedent, there is no legal error.

Best nonetheless argues that *Roane* and *Stitt* are not dispositive because the "standards of review . . . differed markedly" in those cases, Def. Br. 13–15 and invites this Court to "overrule or depart from its own precedent and embrace instead" the Ninth Circuit's outlier view, Def. Br. 16 (citing *United States v. Jerome*, 942 F.2d 1328 (9th Cir. 1991)). But it is well settled that "one panel cannot overrule a decision issued by another panel." *McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc). Best has not petitioned for initial hearing en banc and, in any event, none of his arguments warrant reconsideration of *Roane* and *Stitt* by the

en banc court. This Court's longstanding view, as expressed in *Roane* and *Stitt*, aligns with a majority of other circuits that have considered the issue. Even if the Court were inclined to reconsider its position, Best does not and cannot explain how a district court's refusal to give an instruction that this Court has twice held is not required constitutes error—let alone reversible error. And, because the jury heard ample evidence that Best supervised, organized, or managed five or more individuals, any instructional error did not prejudice Best's case and was harmless. This Court should affirm.

## Argument

### The district court did not reversibly err by refusing a specific unanimity instruction.

This Court "review[s] whether a jury instruction incorrectly stated the law de novo" and "review[s] a district court's decision to give a particular jury instruction for abuse of discretion." *United States v. Hassler*, 992 F.3d 243, 246 (4th Cir. 2021) (quoting *United States v. Miltier*, 882 F.3d 81, 89 (4th Cir. 2018)); *see also, e.g.*, *United States v. McCabe*, 103 F.4th 259, 278 (4th Cir. 2024) (same). This means that, "[a]bsent legal error," the Court "review[s] a district court's jury charge under the highly deferential abuse of discretion standard." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 731 (4th Cir. 2019). This "deferential standard of review . . . is rooted in an acknowledgment that the district court is better positioned than [a court of appeals] to craft instructions that reflect the evidence produced at trial." *Benjamin*

*v. Sparks*, 986 F.3d 332, 348 (4th Cir. 2021). Moreover, "[e]ven if a jury was erroneously instructed," the Court "will not set aside a resulting verdict unless the erroneous instruction *seriously* prejudiced the challenging party's case." *Hassler*, 992 F.3d at 246 (quoting *Miltier*, 882 F.3d at 89).

Here, Best asserts that the district court reversibly erred by failing to give the jury a specific unanimity instruction as to the identities of the "five or more other persons" whom Best organized, supervised, or managed within the meaning of 21 U.S.C. § 848(c)(2)(A). *See* Def. Br. 1, 8–16. But binding Circuit precedent on the issue confirms that the district court did not legally err, and Best cannot demonstrate that the district court abused its discretion by refusing to give a specific instruction that this Court has twice held is not required. Alternatively, any error does not rise to the level of reversible error because it did not prejudice—let alone "*seriously* prejudice[]," *Hassler*, 992 F.3d at 246—Best and, in light of the overwhelming evidence presented at trial, was harmless.

### A. The district court appropriately declined Best's request for a specific unanimity instruction.

This appeal concerns only Best's 21 U.S.C. § 848 conviction for engaging in a "continuing criminal enterprise" (or "CCE"). The essential elements to sustain such a conviction are:

> (1) the defendant committed a felony violation of the federal drug laws; (2) such violation was part of a continuing series of violations of the drug laws; (3) the series of violations were undertaken by the defendant

> in concert with five or more persons; (4) the defendant served as an organizer or supervisor, or in another management capacity with respect to these other persons; and (5) the defendant derived substantial income or resources from the continuing series of violations.

*United States v. Thomas*, 32 F.4th 420, 426 (4th Cir. 2022) (quoting *United States v. Stewart*, 256 F.3d 231, 254 (4th Cir. 2001)). Best's argument concerns the third and fourth of these elements, as to which Best and Bumphus requested a specific unanimity instruction that would have required the jurors to "unanimously agree on the five or more persons" whom they organized, supervised, or managed. JA2969–2970.

This Court, however, has consistently held that "the jury need not unanimously agree on which five persons were organized, supervised, or managed by the defendant." *United States v. Stitt*, 250 F.3d 878, 886 (4th Cir. 2001). In *Stitt*, the defendant was convicted on numerous counts for his role in a large drug distribution ring he led in Virginia and North Carolina, including a continuing criminal enterprise charge. *See id.* at 881–82. In its charge to the jury, the district court "did not instruct the jury that it had to be unanimous as to . . . which five persons Stitt managed or supervised during the CCE." *Id.* at 881; *see also id.* at 882. On appeal, the defendant argued that the court's instructions constituted reversible error based on *Richardson v. United States*, 526 U.S. 813 (1991), which was decided after Stitt was convicted and sentenced. *See id.* at 882. In rejecting that argument, this Court explained that, "[i]n *Richardson*, the Supreme Court assumed, without

deciding, 'that there is no unanimity requirement in respect to' 21 U.S.C.A. § 848(c)(2)(A), the statutory requirement 'which requires a defendant to have supervised 'five or more other persons.''" *Id.* at 885–86 (quoting *Richardson*, 526 U.S. at 824).

Accordingly, this Court held that, "[a]s long as the jurors unanimously conclude that the Government has proven the other required elements and that the defendant organized, supervised, or managed five or more persons, we hold that the jury need not unanimously agree on which five persons were organized, supervised, or managed by the defendant." *Id.* at 886. In so holding, it explained that "the identity of the individual supervisees is irrelevant" because "[p]recise details, like the identities of the underlings supervised by the defendant, are not essential elements of the CCE but rather 'merely historical facts as to which the jurors could have disagreed without undermining their substantial agreement as to the ultimate and essential fact of whether the requisite size and level of control existed.'" *Id.* at 886–87 (quoting *United States v. Jackson*, 879 F.2d 85, 89 (3d Cir. 1989)). The Court thus "conclude[d] that the district court did not err by failing to give an instruction requiring that the jury agree unanimously on which five underlings Stitt managed, organized, or supervised." *Id.* at 887.

Since *Stitt*, this Court has reaffirmed that there is no entitlement to "a special unanimity instruction" in continuing criminal enterprise cases "regarding the

identities of the 'five or more persons' that each of [the defendants] was alleged to have supervised." *United States v. Roane*, 378 F.3d 383, 399 (4th Cir. 2004). *Roane* noted that, "in *Stitt*, [this Court] held that *Richardson* did not change the rule 'that the jury need not unanimously agree on which five persons were organized, supervised, or managed by the defendant.'" *Id.* (quoting *Stitt*, 250 F.3d at 886); *see also, e.g.*, *United States v. Ealy*, 363 F.3d 292, 298 (4th Cir. 2004) (rejecting defendant's "claim that the district court erred in refusing to instruct the jury that it must agree unanimously on the identity of the 'five or more other persons'").

The opening brief acknowledges that *Stitt* and *Roane* "concededly undermine Best's appellate position that he was entitled to a unanimity instruction on the 'five or more persons' elements of Section 848(c)." Def. Br. 13. Nonetheless, Best contends that "neither of those Fourth Circuit opinions is dispositive because the standards of review . . . differed markedly" in those cases, and invites this Court to "overrule or distinguish Stitt and Roane and follow instead" the Ninth Circuit's outlier approach as set forth in *United States v. Jerome*, 942 F.2d 1328 (9th Cir. 1991). *See id.* at 13–15; *see also id.* at 16 (urging this Court to "overrule or depart from its own precedent and embrace instead the Jerome Court's analysis"). But neither case turned on the standard of review. *Stitt* held, at the first step of the plain-error analysis, that "the district court *did not err* by failing to give an instruction requiring that the jury agree unanimously on which five underlings Stitt managed,

organized, or supervised." *Stitt*, 250 F.3d at 887 (emphasis added). That flowed from the Court's "hold[ing] that the jury need not unanimously agree on which five persons were organized, supervised, or managed by the defendant." *Id.* at 886. Nor did *Roane* turn on the standard of review or procedural posture. Instead, the Court concluded that "[b]ecause *Stitt* stands for the proposition that unanimous agreement on the identity of each supervisee is not required," defense counsel "were not ineffective in failing to seek such an instruction." *Roane*, 378 F.3d at 399.

In any event, Best cannot circumvent the substantive legal holdings of binding Circuit precedent based solely on the context of—or standards of review applicable in—the prior cases. *See, e.g.*, *United States v. Fulks*, 454 F.3d 410, 434 (4th Cir. 2006) ("Although the issue of the admissibility of polygraph results surfaced in *Goins* in the context of a *Brady* claim, we are bound by its conclusion that 'the Constitution does not mandate admission of polygraph results in capital sentencing proceedings.'"). The conclusion that binds from *Stitt* and *Roane* is clear and unambiguous—*i.e.*, "the rule 'that the jury need not unanimously agree on which five persons were organized, supervised, or managed by the defendant.'" *Roane*, 378 F.3d at 399 (quoting *Stitt*, 250 F.3d at 886). That "rule" is neither dicta nor the kind of "unchallenged or untested assumption" that does not bind future panels, *see United States v. Norman*, 935 F.3d 232, 241 (4th Cir. 2019), and is squarely applicable and dispositive here.

Despite Best's invitation, one panel also cannot "overrule or depart from its own precedent and embrace instead" the Ninth Circuit's outlier approach. *Contra* Def. Br. 16; *see McMellon*, 387 F.3d at 332 ("one panel cannot overrule a decision issued by another panel"). "That rule does not disappear just because a future litigant identifies a fact, theory, or line of argument the previous panel could have but did not consider." *Gibbons v. Gibbs*, 99 F.4th 211, 213 (4th Cir. 2024). In any event, the panel in *Roane* expressly acknowledged and rejected the Ninth Circuit's alternative approach set forth in *Jerome*. *See Roane*, 378 F.3d at 399 (citing *Jerome*, 942 F.2d at 1330–31). And, as Best concedes, this Court's "longstanding view, as expressed in Stitt and Roane, aligns with that of the majority of circuits." Def. Br. 13 n.4 (collecting cases).

The Ninth Circuit's decision in *Jerome* is also distinguishable. There, the defendant was a drug dealer who received his product from multiple suppliers and had three individuals who assisted with collecting debt and purchasing products. *Jerome*, 942 F.2d at 1329. The prosecution had argued to the jury that the defendant was "the organizer" of twelve persons consisting of his suppliers and those who assisted him. *See id.* at 1330. On appeal, however, the government "concede[d] that under no interpretation of the term 'organizer' could [the defendant] be said to be the organizer of the suppliers of his suppliers." *Id.* "With [that] concession," the Ninth Circuit concluded that at least five of the twelve persons whom the prosecution

had argued to the jury were organized by the defendant "could not count among the five persons" required for 21 U.S.C. § 848(c)(2)(A). *See id.* As to the remaining seven "possible persons who acted in concert with" the defendant, the Ninth Circuit concluded that the evidence was "open to interpretation" in such a way that the jury could have been confused about the facts underlying the conviction. *See id.* at 1330–31. On these facts, given that the jury had been "presented with a variety of persons that the prosecution told them could count in making up the five persons necessary to trigger the statute" but "some of the people named by the prosecution could not have been organized by [the defendant]," the Ninth Circuit held that a specific unanimity instruction was required and the district court's "failure . . . to so instruct was highly prejudicial, with a high probability of substantially affecting the jury verdict." *See id.* at 1331. That is a far cry from this case, *contra* Def. Br. 16, where there was nothing borderline about the sufficiency of the evidence demonstrating that Best organized, supervised, or managed far more than five persons as part of co-

leading a large-scale drug-trafficking organization in which 36 defendants were indicted. *See infra* Part B.[4]

### B. Alternatively, any instructional error was harmless.

In the alternative, to the extent there was any instructional error, it does not warrant reversal. "Even if a jury was erroneously instructed," the Court "will not set aside a resulting verdict unless the erroneous instruction *seriously* prejudiced the challenging party's case." *Hassler*, 992 F.3d at 246 (quoting *Miltier*, 882 F.3d at 89). "[I]n fact, the Supreme Court has held that even the instructional error of omitting an element of a statute is not necessarily infirm in the absence of serious prejudice." *United States v. Rock*, 2022 WL 17688855, at *1 (4th Cir. June 1, 2022) (per curiam) (quoting *United States v. McCauley*, 983 F.3d 690, 695 (4th Cir. 2020)); *see Neder v. United States*, 527 U.S. 1, 8–9 (1999).

The opening brief does not expressly make any prejudice argument. At most, it suggests that reversal would be necessary because, "as in Jerome, here '[t]he jury

[4] Indeed, requiring a specific unanimity instruction in a case with "special circumstances" and the "real possibility of juror confusion"—neither of which Best has alleged exists here—is consistent and reconcilable with this Court's caselaw. *See, e.g.*, *United States v. Roach*, 28 F.3d 1212 (4th Cir. 1994) (unpublished) ("In this Circuit, a defendant is entitled to a specific unanimity instruction only if there are 'special circumstances.' 'Special circumstances' relate to whether there is a real possibility of juror confusion.") (citing *United States v. Torcasio*, 959 F.2d 503, 508 (4th Cir. 1992), *abrogated on other grounds by Evans v. United States*, 504 U.S. 255 (1992)).

in this case was presented with a variety of persons that the prosecution told them could count in making up the five persons necessary to trigger the statute'" and the requested unanimity instruction "would have ensured some jurors did not convict on the basis of one set of facts while others convicted '. . . on the basis of another set of facts.'" Def. Br. 16 (alterations in original) (quoting *Jerome*, 942 F.3d at 1331). But this case is not like *Jerome*. There, "the prosecution argued to the jury that [the defendant] was the organizer of" twelve specific persons (*i.e.*, "of John Wooster; of Joe and Monica Kinney; of Sharon Unden; of Jay and Duke; of Kendricks, Sanders, Larrozolo, Pellon, and Devaney; and of Hall"). 942 F.3d at 1330. But, as noted above, the government conceded that at least five of those twelve persons (*i.e.*, "Devaney, Larrozolo, Kendricks, Pellon and Sanders") "could not count among the five persons [the defendant] was found to have organized," and the Ninth Circuit concluded that the evidence as to the remaining seven "possible persons" who could have made up the "five or more other persons" necessary to sustain the defendant's § 848 conviction was "open to interpretation." *Id.*; *see also supra* pp. 14–15.

Specifically, the Ninth Circuit explained that, while the evidence as to two of those seven remaining persons (*i.e.*, Hall and Unden) was relatively irrefutable, "a rational juror could have inferred" that two others (*i.e.*, "Jay and Duke") were "enforcers" rather than supervisees, and there was a "debatable question" regarding whether another three, who were the defendant's "regular suppliers" (*i.e.*, "Wooster

and the Kinneys") "were subject to [the defendant] as 'an organizer'" rather than the defendant "simply being a steady customer." *Jerome*, 942 F.3d at 1330–31. In other words, the Ninth Circuit found prejudice because there may have been insufficient evidence to sustain the jury's conviction. *See id.* at 1331.

Here, however, there is no contention that there was borderline or insufficient evidence that Best organized, supervised, or managed at least five or more other persons. Indeed, evidence presented at trial demonstrated that Best was at the top of a large-scale drug-trafficking organization involving dozens of individuals, many of whom testified at trial (including Best's "paramour, Camille Smith, a co-defendant who turned witness for the prosecution," Def. Br. 8). *See supra* pp. 14–15; *see also* JA3120–3121; JA3155–3159. In addition to Camille Smith, the jury heard evidence of Best's organization, supervision, or management of many others, including, for example, Freddie Moore (known as "Goons"), Kesean Morris (known as "KK"), Damian Gay (known as "Hatch"), Carl Mitchell (known as "Lil Man"), Terrance Vick (known as "Phil"), Bernard West (known as "Bernie"), Terrell Debrew (known as "Rell Rell"), Farrah Fair, and Tyleek (known as "Leek"). *See, e.g.*, JA1318–1351; JA1387–1388; JA1458–1459; JA1660–1677. Unlike in *Jerome*, all of these participants could "have been organized" by Best. *See Jerome*, 942 F.3d at 1331. Given the overwhelming evidence presented at trial, Best cannot demonstrate that he was seriously prejudiced by any supposed instructional error regarding the

identities of the five or more persons Best organized, supervised, or managed within the meaning of 21 U.S.C. § 848(c)(2)(A).

**Conclusion**

The district court's decision to decline Best's requested unanimity instruction was consistent with and supported by this Court's binding precedent. Because the requested instruction was not required, the district court did not err. Alternatively, because of the overwhelming evidence against Best at trial, any potential instructional error did not seriously prejudice Best and was harmless. The Court should affirm Best's convictions and sentence.

Respectfully submitted,

Todd W. Blanche
Attorney General

Theophani K. Stamos
First Assistant United States Attorney

/s/

Eric M. Hurt
Assistant United States Attorney

**Statement Regarding Oral Argument**

The United States respectfully suggests that oral argument is not necessary in this case. The legal issue is not novel, and oral argument likely would not aid the Court in reaching its decision.

**Certificate of Compliance**

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 365.

I further certify that this brief does not exceed 13,000 words (and is specifically 4,958 words) as counted by Microsoft Word.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

/s/
Eric M. Hurt
Assistant United States Attorney